IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHELLE FONTENETTE-WILSON,<br><br><br>Plaintiff,<br><br>v.<br><br><br>DRIFTWOOD HOSPITALITY MANAGEMENT, SHERATON INN, NAZCO ENTERPRISES, INC. SMART HOME IMPROVEMENT dba SMART CONSTRUCTION, and JOHN DOES 1-10,<br><br><br>Defendants. | **MEMORANDUM DECISION GRANTING DRIFTWOOD'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-cv-832-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a Motion for Summary Judgment (Docket 51) filed by Defendant Driftwood Hospitality Management d/b/a Sheraton Salt Lake City Hotel ("Driftwood"). After hearing oral argument on the motion on September 16, 2016, and considering the written submissions and relevant case law, the court issues this Order GRANTING Defendant's Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Michelle Fontenette-Wilson brings this action alleging that she was struck on the ankle and injured when a soap dish fell from the shower wall in her hotel room at the Salt Lake City Sheraton Inn ("Sheraton Hotel"). Ms. Fontenette-Wilson asserts that Driftwood was negligent in various ways and that its negligence caused her injuries. Specifically, Ms.

Fontenette-Wilson alleges that Driftwood was negligent in providing unsafe conditions for its guest, in renovating the rooms in an improper manner, in using inappropriate and unsafe adhesives in the installation of the soap dish, and in failing to inspect, test and otherwise protect guests.

Driftwood moves for summary judgment arguing that there is no evidence that demonstrates that Driftwood breached any duty owed to Ms. Fontenette-Wilson because Driftwood did not create or install the soap dish in question and was only responsible for its maintenance. Driftwood maintains that it had no notice of the dangerous condition of the soap dish, and even if it had such notice, it did not have a reasonable time in which to remedy any defect. Ms. Fontenette-Wilson responds that material disputes of fact preclude summary judgment on these issues.

**FACTS**

Driftwood acquired the Sheraton Hotel on December 20, 2007, and began managing the hotel at that time. Upon acquiring the hotel, Sheraton's brand owner, Starwood, created a "PIP"—a product improvement plan—to determine whether anything in the Sheraton Hotel was in need of updating or replacement. Under the PIP, the bathtub surrounds in the hotel room bathrooms were deemed to be in excellent condition and were not marked for renovation. Shortly after acquiring the Sheraton Hotel, Driftwood contracted to renovate the portions of the hotel slated for renovation. During the renovations, no ceramic soap dishes were installed in any of the bathrooms. The renovation contract was completed in the spring of 2010.

As part of operating the Sheraton Hotel, Driftwood implemented a system of inspection for the guest rooms. The first line of inspection was conducted by the housekeeping staff. Hotel rooms were inspected daily as part of the regular cleaning and straightening of guest rooms. The housekeepers would look for anything broken or deficient in the rooms by "basically touch[ing]

or feel[ing] everything in the room." If a housekeeper noticed anything that was wrong or in need of maintenance, the housekeeper would either write a work order for the hotel's maintenance department, or report the issue to her superior who would then write a work order for the hotel's maintenance department. The second line of inspection was performed by an "inspectress"—a senior housekeeper promoted to the position. The inspectress followed up on the rooms cleaned and checked by the housekeeping staff and would "inspect the room to make sure it was cleaned properly and everything was in its place." In addition to the housekeeping and the inspectress's daily inspections of guest rooms, the hotel's Chief Engineer, Bill Rueter, and the General Manager, Terry Mariano, both inspected rooms, at random, on a daily basis. Finally, each of the guest rooms in the hotel would go through a quarterly, checklist inspection by one of the hotel's engineering staff.

On or about July 21, 2011, Ms. Fontenette-Wilson was a guest of the Sheraton Hotel. While she was in the bathroom, a ceramic soap dish that had been attached to the tub surrounds fell and struck her on the ankle, injuring her. Photographs of the soap dish that fell, as well as of the tub surround and dish keyway, indicated that there was a dark line visible on the grout near the soap dish keyway. Mr. Rueter testified that prior to this incident, he was not aware of any soap dishes becoming loose or detached from the tub surrounds at the Sheraton Hotel, nor had there been any reports by any of the staff or guests of loose or unsafe soap dishes. Mr. Mariano similarly testified that he was not aware of any other similar incidents where a soap dish fell from a bathroom wall.

In an affidavit attached to Ms. Fontenette-Wilson's opposition memorandum (the "Brunetti affidavit"), Plaintiff's expert Dennis Brunetti states that after examining the photographs of the front and back of the particular soap dish, the tub surround, and the soap dish

3

keyway, it is his opinion that there was an inadequate amount of adhesive used to apply the soap dish to the wall. Additionally, Mr. Brunetti opines that the grout surrounding the dish may not have been properly sealed, which allowed moisture to migrate around and behind the soap dish, leading to its detachment from the wall.

**ANALYSIS**

**I.      Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the facts in the light most favorable to the nonmovant, and also draws all reasonable factual inferences in the nonmovant's favor. *Tabor v. Hilti, Inc.*, 73 F.3d 1206, 1215 (10th Cir. 2013). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (quoting *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000)). "[T]he movant bears the burden of showing the absence of a genuine issue of material fact, [but] the movant need not negate the nonmovant's claim." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).  "[A] movant may make its prima facie demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Once the movant meets this initial burden, the "nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Jenkins*, 81 F.3d at 990. The court also recognizes that any "conclusory allegations without specific supporting facts have no probative value" and that a conclusory affidavit is "insufficient to support summary judgment."

4

*Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1145 (10th Cir. 2005) (internal citations and quotations omitted).

## II.     Premises Liability

Ms. Fontenette-Wilson's causes of action sound in negligence. The parties do not dispute that Utah law governs in this diversity action. Under Utah law, a plaintiff must establish the following four elements to succeed on a negligence claim: "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). At issue here is whether there was a breach of any duty that Driftwood owed to Ms. Fontenette-Wilson.

In Utah, it is well-settled that the duty of an innkeeper is to exercise reasonable and ordinary care and prudence to maintain the premises in a reasonably safe condition for guests, but not to make the innkeeper an insurer of his guests' safety. *Moore v. James*, 297 P.2d 221, 223 (Utah 1956). Ms. Fontenette-Wilson argues that this duty was breached on a premises liability theory. Premises liability claims can be divided into two classes: (i) those involving a temporary unsafe condition on the property, and (ii) those involving permanent unsafe conditions. *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 478 (Utah 1996) (quoting *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175, 176 (Utah 1975). Determining whether there has been a breach of an innkeeper's duty depends on the class of claim at issue.

In the first class of claims, those involving a temporary unsafe condition, fault can only be imputed to the property owner where two conditions are proven: (1) that the property owner had "either actual knowledge, or constructive knowledge because the condition had existed long enough that he should have discovered it," and (2) "that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it." *Id.* This first class of

claim most often occurs when the defendant either (a) negligently failed to remedy a dangerous condition that the defendant did not create; (b) negligently failed to repair a dangerous malfunction in an otherwise safe system; or (c) negligently allowed an otherwise safe condition to degrade over time into a dangerous condition. *Goebel v. Salt Lake City Southern R. Co.*, 104 P.3d 1185, 1193–94 (Utah 2004).

The second class of claims involving a permanent unsafe condition exists where the landowner "either created the condition, or is responsible for it." *Schnuphase*, 918 P.2d at 478. However, when a landowner is responsible for an unsafe condition "only in the context of maintenance," and not "for its existence in the first place," the condition is not permanent in nature. *Goebel*, 104 P.3d at 1193. In cases involving a permanent unsafe condition, the land owner is deemed to know of the condition, and no further proof of notice is necessary. *Schnuphase*, 918 P.2d at 478. But to survive a motion for summary judgment in this second class of claim, there must be evidence that shows the condition was inherently dangerous and that the injury arising from it was foreseeable. *Id.* at 479.

Here, the undisputed facts demonstrate that Ms. Fontenette-Wilson's claims fall within the first class of claims inasmuch as they arise from a temporary unsafe condition. Driftwood cannot be said to be responsible for, or to have created the unsafe condition of the soap dish because there is no evidence in the record indicating that any ceramic soap dishes were installed or renovated from the time Driftwood acquired and began managing the Sheraton Hotel.[1] The undisputed facts indicate that the soap dish was already in place when Driftwood took control of the Sheraton Hotel. The dangerous condition of the soap dish is best described as either a dangerous condition that Driftwood did not create but negligently failed to remedy, or an

---

[1] Indeed, this court granted co-defendant, Nazco Enterprises, Inc., summary judgment on the issue of whether any ceramic soap dishes were installed during the extensive renovations that took place shortly after Driftwood acquired the Sheraton Hotel. (Docket 64).

otherwise safe condition that Driftwood negligently allowed to degrade over time into a dangerous condition. Under either description, the soap dish condition falls squarely within the temporary unsafe condition class of claims.[2] In cases involving such claims, "evidence of [i.] notice and [ii.] a reasonable time to remedy are required to survive a motion for summary judgment." *Goebel*, 104 P.3d at 1193–94. Ms. Fontenette-Wilson fails to bring forward specific facts showing a genuine issue for trial as to either of these elements.

        A.      Notice of the Dangerous Condition

In order to survive a motion for summary judgment, Ms. Fontenette-Wilson must present evidence to show Driftwood had actual or constructive notice of the unsafe condition. *See id.* at 1194; *Allen*, 538 P.2d at 176. In support of its motion for summary judgment, Driftwood identified deposition testimony from both Mr. Mariano and Mr. Rueter that prior to Ms. Fontenette-Wilson's incident, neither was aware of any instances where a soap dish had fallen from a bathroom wall. There likewise is no evidence of any of the housekeeping staff or hotel guests reporting any problems with soap dishes. These facts indicate that Driftwood did not have actual notice of the dangerous condition of the soap dish. Ms. Fontenette-Wilson does not point to any evidence in the record that would indicate a dispute on this point and conceded as much at oral argument. Therefore, the facts on this point are undisputed and do not support a finding of actual notice by a rational jury.

Constructive notice of a temporary unsafe condition can be found where the condition "existed long enough that [the property owner] should have discovered it." *Allen*, 538 P.2d at 176. A court may also find constructive notice where the property owner failed to reasonably inspect and discover the unsafe condition. *Goebel*, 104 P.3d at 1194; *Maloney v. Salt Lake City*,

---

[2] Counsel for Ms. Fontenette-Wilson admitted as much at oral argument.

262 P.2d 281, 282 (Utah 1953). A property owner, however, is not required to make perfect inspections or to be an "insurer[] of those who come upon their property, even though they are business invitees." *Martin v. Safeway Stores, Inc.*, 565 P.2d 1139, 1141 (Utah 1977). Rather, inspections are reasonable when they meet the standard of care for premises inspections and discovery of defects—"whether the defect would be apparent to ordinary prudent persons with like experience, not to persons with specialized knowledge." *Johnson v. Gold's Gym*, 206 P.3d 302, 309 (Utah 2009) (quoting *Mitchell v. Christensen*, 31 P.3d 572, 575 (Utah 2001)).

Driftwood alleges that there is no evidence that would allow a jury to make an inference as to how long the dangerous condition existed prior to Ms. Fontenette-Wilson's accident, or that Driftwood's regular inspections were unreasonable. Ms. Fontenette-Wilson responds by pointing to the Brunetti affidavit's description of the dark line along the grout surrounding the soap dish. This fact, Ms. Fontenette-Wilson contends, would allow a jury to infer that the dark line pre-dated the fall and "that moisture had permeated the surrounding material and migrated behind the dish," causing the adhesive behind it to fail. Indeed, Plaintiff's expert, Mr. Brunetti, opined, "The dark area on the shower wall, the dark line visible on a grout line and loose soap dish are things that housekeeping and inspection personnel should have noticed and addressed with proper maintenance or repair." Attached to Mr. Brunetti's are photographs of the soap dish and tub surrounds that show the visible dark areas or lines in the grout. But the dark areas or lines that Mr. Brunetti contends should have been noticed by the housekeeping staff were not the dangerous condition;[3] rather, the dangerous condition was the weakened, deteriorating adhesive

---

[3] The court finds it hard to believe that the discoloration of grout in a bathtub or shower could be a dangerous condition at all. Such discoloration is commonplace is bathrooms generally, but especially in grout in and around showers, bathtubs, and sinks where a combination of soap, moisture and other conditions make discoloration common.

behind the soap dish. And Ms. Fontenette-Wilson points to absolutely no evidence that the soap dish was actually loose prior to it falling from the wall.

Although Ms. Fontenette-Wilson's proffered evidence shows there was discoloration in the area near the soap dish, what it does not show is that the discoloration should have put an ordinary individual on notice that water was entering behind the dish and weakening the adhesive behind it. There is no evidence that Driftwood's employees, or any ordinary, prudent person without specialized knowledge, should have realized that the dark areas were more than just common mold or mildew that needed to be cleaned. In short, the Brunetti affidavit does not speak at all to whether the Driftwood staff should have known that the dark marks would indicate that water was somehow migrating around and behind the soap dish; rather, the affidavit only makes the bare, conclusory statement that the dark areas should have alerted the Driftwood staff to the need for some kind of maintenance or repair. Asking a jury to make the logical leap from some discoloration near a soap dish to water seeping behind the soap dish and weakening the adhesive holding it in place would call for a jury to speculate.

Further, there is no evidence in the record that would allow a jury to infer that the soap dish was loose or wobbly[4] at any time prior to the alleged incident, or that there was any other indication that the soap dish presented a dangerous condition, let alone that the dangerous condition existed for such a time that Driftwood should have discovered it. The only evidence in the record on this point is that there were many inspections of the hotel rooms and that there had never been a report of a loose or otherwise compromised soap dish anywhere in the Sheraton Hotel. In short, Ms. Fontenette-Wilson has failed to "bring forward specific facts showing a genuine issue for trial as to" whether or for how long the soap dish was loose or defective, or that

---

[4] Although the Brunetti affidavit says that a "loose soap dish" is something the housekeeping and inspection personnel should have noticed, there is nothing that indicates that the soap dish was indeed loose at all prior to its fall.

Driftwood had constructive notice thereof. *Jenkins*, 81 F.3d at 990. Based on the facts brought forward, it would not be reasonable for a jury to infer that Driftwood was on notice that the soap dish was loose and could potentially fall from the shower wall. Accordingly, there is no dispute as to any material fact and, as a matter of law, Driftwood had no notice of the dangerous condition.

      B.      Reasonable Time to Remedy the Dangerous Condition

Because there is no evidence of how long the dangerous condition existed before the accident occurred, Ms. Fontenette-Wilson cannot demonstrate that Driftwood had enough time to remedy the condition. To survive summary judgment, Ms. Fontenette-Wilson must come forward with specific facts that show a genuine issue for trial as to whether there was a reasonable time for Driftwood, after it had notice of the dangerous condition, to remedy it. *Jenkins*, 81 F.3d at 990; *Goebel*, 104 P.3d at 1193–94.

Driftwood argues that, even if there are facts sufficient to show that it had constructive or actual notice of the defect in the soap dish, Ms. Fontenette-Wilson cannot point to any evidence in the record to show how long Driftwood had such notice. Ms. Fontenette-Wilson responds by arguing that she only needs to show the *probability* of a reasonable time to remedy the condition, citing *Goebel*. Ms. Fontenette-Wilson, again pointing to the Brunetti affidavit, states that the dark areas and lines visible in the photographs attached to the affidavit "can reasonably be presumed to have pre-dated the fall," and a jury could infer that there was the probability of a reasonable amount of time in which to remedy the problem. The court disagrees with Ms. Fontenette-Wilson's interpretation of *Goebel*.

In *Goebel*, the plaintiff argued that a gap between two panels at a railroad crossing must have evolved gradually, supporting his argument that the defendant "should have known it existed long enough to have a reasonable time in which to repair it." 104 P.3d at 1194. The Utah

Supreme Court rejected that argument for two reasons: first, because the gap could have formed suddenly, and second, there was no evidence the defendant should have noticed the gap. *Id.* The court further held that the plaintiff was required to bring forward "evidence from which a jury could infer the length of time" that the defendants had notice, not merely the probability of a reasonable time. *Id.* Our case is similar to *Goebel*.

The court agrees with Ms. Fontenette-Wilson that the dark line on the grout visible in the photographs can reasonably be presumed to have pre-dated the fall—dark lines that appear in a bathroom due to mold, mildew, or other issues appear gradually over time. But the dark areas and lines are not the dangerous condition at issue and, as explained above, do not provide notice of a dangerous condition. The dangerous condition in this case was the soap dish with either inadequate or damaged adhesive that eventually fell from its place in the tub surround. Ms. Fontenette-Wilson identifies no facts that would allow a jury to find, by inference or otherwise, that the soap dish was loose or that the inadequate or otherwise defective adhesive could have been discovered prior to its eventual fall.

From the time Driftwood acquired its interest in the Sheraton Hotel, its employees regularly cleaned and inspected the soap dish without finding any problems with it. Even if the adhesive behind the soap dish degraded over time, there is no evidence that would allow a reasonable jury to conclude that Driftwood was aware of it or had a reasonable time to remedy it if they knew of it. Like the plaintiffs in *Goebel*, Ms. Fontenette-Wilson does not identify evidence that the dangerous condition developed over time.  Based on the evidence before the court, the only reasonable inference is that the soap dish felt completely solid in its place before it fell. As part of their daily cleaning, the housekeeping staff "basically touch[es] or feel[s] everything in the room" and there was never an indication that the dish was loose. Where there is

11

no evidence regarding the amount of time the unsafe condition existed, as a matter of law, Driftwood could not have known of the dangerous soap dish for a period of time sufficient for it to remedy the problem. Accordingly, Driftwood is entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, the court GRANTS Driftwood's Motion for Summary Judgment (Docket 51).

Signed October 19, 2016.

BY THE COURT

Jill N. Parrish
United States District Court Judge